IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| BAKER EVENTS, LLC; JAY CARLL; DAVID VANSOLKEMA; and KILEY STULLER,<br><br>           Plaintiffs,<br><br>     v.<br><br>GRETCHEN WHITMER, in her official capacity as Governor for the State of Michigan; DANA NESSEL, in her official capacity as Attorney General of the State of Michigan; and LISA STEFANOVSKY, in her official capacity as Health Officer, Ottawa County Department of Public Health,<br><br>           Defendants. | **COMPLAINT** |

Plaintiffs Baker Events, LLC, Jay Carll, David Vansolkema, and Kiley Stuller (collectively referred to as "Plaintiffs"), by and through undersigned counsel, bring this Complaint against the above-named Defendants, their employees, agents, and successors in office, and in support thereof allege the following upon information and belief:

**INTRODUCTION**

1.      The "exercise of religion" embraces two concepts: the freedom to believe and the freedom to act. *Cantwell v. Conn.*, 310 U.S. 296, 303 (1940). Accordingly, "[t]he Free Exercise Clause categorically prohibits government from regulating, prohibiting, or rewarding religious beliefs as such." *McDaniel v. Paty*, 435 U.S. 618, 626 (1978)). "The principle that government may not enact laws that suppress religious belief or practice is . . . well understood." *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 523 (1993).

2.      As confirmed by the U.S. Supreme Court, "Business practices that are compelled or limited by the tenets of a religious doctrine fall comfortably within [the definition of 'exercise

- 1 -

of religion']. Thus, a law that 'operates so as to make the practice of . . . religious beliefs more expensive' in the context of business activities imposes a burden on the exercise of religion." *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 710 (2014).

3. This civil rights action is brought under the First and Fourteenth Amendments to the United States Constitution, and 42 U.S.C. § 1983, challenging Defendant Whitmer's executive orders as applied to prohibit the use of private property for wedding ceremonies.

4. Plaintiffs seek a declaration that the enactment and enforcement of the challenged restrictions ordered by Defendant Whitmer as set forth in this Complaint violate their fundamental liberties and rights secured by the United States Constitution and an order enjoining the same. Plaintiffs also seek an award of attorneys' fees and costs pursuant to 42 U.S.C. § 1988, and other applicable laws.

## JURISDICTION AND VENUE

5. This action arises under the Constitution and laws of the United States. Jurisdiction is conferred on this Court pursuant to 28 U.S.C. §§ 1331 and 1343.

6. Plaintiffs' claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202, by Rules 57 and 65 of the Federal Rules of Civil Procedure, by *Ex parte Young*, 209 U.S. 123 (1908), and by the general legal and equitable powers of this Court.

7. Plaintiffs' claim for an award of their reasonable costs of litigation, including attorneys' fees and expenses, is authorized by 42 U.S.C. § 1988 and other applicable law.

8. Venue is proper under 28 U.S.C. § 1391(b) because the Office of the Governor of Michigan, the Office of the Michigan Attorney General, and the Ottawa County Department of Public Health are located in this judicial district and all Defendants are residents of the State in which this district is located.

## PARTIES

9. Plaintiff Baker Events, LLC ("Baker Events") is a family-operated Michigan limited liability company with its principal place of business in Ottawa County, Michigan. Baker Events leases and operates property located in Ottawa County that it uses for wedding ceremonies, which include wedding receptions (hereinafter referred to as the "wedding property.").

10. Baker Events is licensed in Michigan to serve food and beverages at its wedding property.

11. Plaintiff Jay Carll is an adult citizen of the United States, a resident of Michigan, and a Christian. Plaintiff Carll is a Member of Baker Events. The corporation has only two Members: Plaintiff Jay Carll and Lisa Carll. Plaintiff Jay Carll is responsible for managing the business operations of Baker Events, including the use of the wedding property, and he has the authority to act on behalf of the company.

12. Baker Events and Plaintiff Carll have dedicated Baker Events' wedding property for religious worship because it advances their religious belief and conviction that they should use all of their gifts, including their business interests, to advance the Kingdom. Thus, dedicating the wedding property for religious worship is a form of religious exercise for Baker Events and Plaintiff Carll.

13. Plaintiff David Vansolkema is an adult citizen of the United States, a resident of Michigan, and a Christian. Plaintiff Vansolkema is scheduled to marry Plaintiff Kiley Stuller on July 24, 2020, at the Baker Events wedding property.

14. Plaintiff Vansolkema entered into a contract with Baker Events on or about May 29, 2019, for the purpose of holding his wedding at the Baker Events wedding property.

15. Plaintiff Kiley Stuller is an adult citizen of the United States, a resident of Michigan, and a Christian.

16. As Christians, Plaintiffs Vansolkema and Stuller believe that a wedding is a sacred event where Christ is present. Plaintiffs Vansolkema and Stuller want to exercise their rights to religious freedom and expressive association by having their wedding at the Baker Events' wedding property. This is their chosen place of religious worship for their wedding.

17. Defendant Gretchen Whitmer is the Governor of the State of Michigan.

18. Under color of State law, Defendant Whitmer issued various executive orders, including Executive Order Nos. 2020-110 and 2020-143. Defendant Whitmer will continue to issue executive orders in light of the current COVID-19 pandemic and the anticipated recurrence of the spread of this virus.

19. Defendant Whitmer is sued in her official capacity only.

20. Defendant Dana Nessel is the Attorney General of Michigan. The Attorney General is the State's top law enforcement official.

21. As the Attorney General, Defendant Nessel has authority to investigate and enforce violations of Defendant Whitmer's executive orders.

22. As the Attorney General, Defendant Nessel is actively involved with investigating and enforcing violations of Defendant Whitmer's executive orders and has issued cease and desist letters to individuals and businesses that have violated these orders, threatening criminal sanctions if the individuals or businesses fail to comply.

23. Defendant Nessel is sued in her official capacity only.

24. Defendant Lisa Stefanovksy is the Health Officer for the Ottawa County Department of Public Health. As the Health Officer for the County, Defendant Stefanovsky is

responsible for enforcing Defendant Whitmer's executive orders in Ottawa County.

25. Under the supervision of Defendant Stefanovsky, the Ottawa County Department of Public Health issued a cease and desist letter to Baker Events on or about July 2, 2020, for allegedly failing to comply with Defendant Whitmer's executive orders.

26. Defendant Stefanovsky is sued in her official capacity only.

## STATEMENT OF FACTS

27. On June 1, 2020, Defendant Whitmer issued Executive Order 2020-110 ("EO 2020-110"), which was described as imposing a "[t]emporary restrictions on certain events, gatherings, and businesses." A true and correct copy of EO 2020-110, which is incorporated herein by reference, is attached to this Complaint as Exhibit 1.

28. On July 1, 2020, Defendant Whitmer issued Executive Order 2020-143 ("EO 2020-143"), which is described as "[c]losing indoor service at bars." A true and correct copy of EO 2020-143, which is incorporated herein by reference, is attached to this Complaint as Exhibit 2.

29. A willful violation of these executive orders is a misdemeanor. Also, a violation of these orders could result in civil citations and penalties and the suspension of a violator's business licenses.

30. Pursuant to EO 2020-110, "Indoor social gatherings and events among persons not part of a single household are permitted, but may not exceed 10 people."

31. Pursuant to EO 2020-110, "Outdoor social gatherings and events among persons not part of a single household are permitted, but only to the extent that: (a) The gathering or event does not exceed 100 people, and (b) People not part of the same household maintain six feet of distance from one another."

32. Consistent with prior executive orders, EO 2020-110 expressly states that "nothing in this order shall be taken to abridge protections guaranteed by the state or federal constitution under these emergency circumstances."

33. Three days after she issued EO 2020-110, Defendant Whitmer promoted and even participated in an outdoor social gathering that far exceeded 100 persons. When questioned about her decision to march "shoulder to shoulder" with "hundreds of" protesters—conduct prohibited under EO 2020-110 even for outdoor gatherings—Defendant Whitmer's spokesperson explained that this social gathering did not violate the executive order because "[n]othing in th[e] order . . . abridge[s] protections guaranteed by the state or federal constitution."

34. Beyond her personal participation in these social gatherings, Defendant Whitmer allowed protestors to assemble in large groups of well over 100 persons for nearly the entire month of June.

35. Consequently, Defendant Whitmer is willing to allow spontaneous, uncontrolled, and large social gatherings promoting one type of message, while prohibiting Plaintiffs' organized weddings, even though the weddings, unlike the permitted protests, would be carried out with significant health and safety measures.

36. Additionally, EO 2020-110 expressly states, "Consistent with prior guidance, neither a place of religious worship nor its owner is subject to penalty under section 19 of this order for allowing religious worship at such place. No individual is subject to penalty under section 19 of this order for engaging in religious worship at a place of religious worship, or for violating the face covering requirement of section 4(b) of this order."

37. In prior litigation challenging provisions of Defendant Whitmer's executive orders, Defendant Whitmer stipulated to a court-signed order providing that the "place of

religious worship" exception applies to religious gatherings by family members at a private residence. A true and correct copy of this order ("Stipulated Order Resolving Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction"), which is incorporated herein by reference, is attached to this Complaint as Exhibit 3.

38. The wedding property leased by Baker Events is principally a venue for holding weddings. A wedding is a form of religious worship.

39. Baker Events has a food service license (license no. SFE4170078192). This license allows Baker Events to prepare and serve food on-site during the weddings.

40. Baker Events subcontracts with Gilmore Collection for food and alcohol services. When patrons would like to have alcohol at their wedding, they may do so as Gilmore Collection has the right under its "catering permit," which is authorized by M.C.L. § 436.1547 of the Michigan Liquor Control Act, to serve alcohol. Accordingly, Baker Events' patrons contract with Gilmore Collection separately regarding the food and beverage. Baker Events requires this in its contract, as only Gilmore Collection is permitted to serve food and alcohol at Baker Events—Baker Events provides the space for the wedding.

41. Baker Events' wedding property is located at 217 East 24th Street in Holland, Michigan, and it consists of two indoor spaces (one on the main level and one on the second level).

42. The space on the main level of the building is 5,800 square feet. There is an additional 2,000 square feet of kitchen and service area space. The capacity for the main level space is 380 people. There is also a 1,500 square foot outdoor patio that is connected to the main level space.

43. The second level space is 4,600 square feet and has a capacity of 240 people.

44. Baker Events has installed three air purifiers in the main level space and two air purifiers in the second level space. The air purifiers are the recommended size to purify the air in the space seven times an hour.

45. Baker Events has installed multiple sanitation stations throughout each space. It has eliminated buffet style dinners, and all of its staff wear gloves and face masks, and they undergo temperature checks prior to working.

46. Baker Events has implemented social distancing and mask-wearing protocols consistent with the guidance issued by the Centers for Disease Control and Prevention (CDC), and they communicate these requirements to those who attend the wedding events. The Baker Events' staff enforces these requirements at all weddings.

47. Prior to having their indoor events shut down by the Ottawa County Department of Public Health, Baker Events operated at 50% capacity, which is the guideline for "restaurants . . . and like places" under the operative executive orders. Under these guidelines, Baker Events could host a wedding with 190 people in the main level space and a wedding of 120 people in the second level space.

48. Additionally, Baker Events has setup a tent outside its building, and Plaintiff Carll was informed by the Ottawa County Department of Public Health that they can have 100 people under the tent for weddings, including ceremonies and receptions. The tent is less than ideal because it greatly limits the number of persons who can attend the wedding, and it does not protect the wedding guests from adverse weather, including driving rain and hot and cold temperatures.

49. On July 1, 2020, the Ottawa Department of Public Health issued guidance on the enforcement of Defendant Whitmer's executive orders titled, "Social Gatherings and Event

Limitations" ("ODPH Guidance").  A true and correct copy of the ODPH Guidance, which is incorporated herein by reference, is attached to this Complaint as Exhibit 4.

50. Pursuant to the ODPH Guidance:

Social gatherings and organized events include any organized events among persons not part of the same household (e.g. weddings, rehearsal dinner, charity dinners, dances, etc.).  These are organized events traditionally held at banquet halls, event spaces, or other locations within the community.  They are considered social gatherings and are not regular bar and restaurant operations. Holding banquets and events does not align with the Phase 4 requirements of small gatherings to prevent the spread of COVID-19.

51. On or about July 2, 2020, Andrew Priest, Environmental Health Specialist at the Ottawa Department of Public Health, contacted Baker Events to inform it that no weddings (ceremonies or receptions) could take place on the wedding property if there were more than 10 people present.  At around the same time, Mr. Priest emailed a copy of a Cease and Desist Order issued by the Ottawa Department of Public Health to Baker Events.  A true and correct copy of the "Cease and Desist Order" ("Order"), which is incorporated herein by reference, is attached to this Complaint as Exhibit 5.

52. The Order states, in part, that "[y]our facility may not operate as a restaurant/bar. Events indoors that do not meet the Governor's Executive Orders, such as large indoor weddings and parties are not permitted at this time.  The 50% limit for operations only applies to seating at restaurants and bars."

53. The Order warns that "[f]ailure to comply will result in civil citations and/or the suspension of your food service license until you can demonstrate compliance with Executive Orders."

54. Consequently, restaurants and bars, which are not engaging in religious worship, are being treated more favorably than Baker Events' weddings.  Indeed, even though places

engaging in religious worship are exempt from the executive orders, Baker Events' weddings could nonetheless comply with the requirements for secular "food service establishments" as set forth in paragraph 2 of EO 2020-143, but the Order prohibits Baker Events' weddings even if they complied with these requirements.

55.     Upon receiving the Order, Baker Events' General Counsel, Mr. Donald R. Sheff II, called Ms. Adeline Hambley, Environmental Health Manager at the Ottawa Department of Public Health, to discuss the Health Department's interpretation of the executive orders and the application of these orders to Baker Events' weddings.  Ms. Hambley informed Mr. Sheff that the Order was issued without review by the County's Corporation Counsel, and she agreed that Baker Events could hold its one wedding event scheduled for July 3, 2020, and that the Order would not apply to this event.  Ms. Hambley said that she would review the issue with Corporation Counsel and get back with Baker Events the following week.

56.     On or about July 7, 2020, Mr. Douglas W. Van Essen, Ottawa County Corporation Counsel, contacted Mr. Sheff via telephone, informing Mr. Sheff that the Ottawa Department of Public Health was prohibiting Baker Events' weddings because they were "indoor social gatherings" under paragraph 5 of EO 2020-110.  He said that any of Baker Events' outdoor activities would be regulated under paragraph 6 of EO 2020-110.  Mr. Sheff asked Mr. Van Essen to square that with paragraph 13 of EO 2020-110 (the regulations for "restaurants . . . and like places") and paragraph 2 of EO 2020-143 (the regulations for "food service establishments").  Mr. Van Essen could not reconcile the apparent contradiction and simply responded by stating that Baker Events was engaging in "social gatherings."

57.     On or about July 8, 2020, Mr. Sheff contacted Mr. Van Essen via telephone, asking if he could follow up with more detailed questions so that Baker Events could better

understand the Ottawa Department of Public Health's interpretation of the executive orders.  Mr. Van Essen agreed, so Mr. Sheff sent him an email in an effort to seek further clarification.

58.    Mr. Van Essen responded to Mr. Sheff via email in relevant part as follows:

2. A wedding reception is NOT a religious worship activity; it is a social gathering.
3. A wedding ceremony—even if a minister is involved, is not a religious worship service as those terms are used by the Governor.  While Catholic weddings may involve a mass, which is a worship service, Catholic weddings must take place in a sanctified church and could not be held at Baker Events.  [I graduated from ND Law School].

59.    Frustrated by Ottawa County's demonstrably false view of what constitutes religious worship, Baker Events and Plaintiff Carll, through Baker Events' General Counsel, proposed a resolution ("Freedom of Worship Resolution") to the Ottawa County Board of Commissioners in order to protect religious freedom within the County.  The resolution was sent to the Board on or about July 13, 2020, for the Board to consider at its next meeting scheduled for July 14, 2020.  A true and correct copy of the Freedom of Worship Resolution, which is incorporated herein by reference, is attached to this Complaint as Exhibit 6.  The Chairman of the Board refused to place the proposed resolution on the Board's agenda.

60.    Contrary to Ottawa County's view, weddings are religious worship.  Baker Events' wedding property is, properly understood, a place of religious worship, particularly when it is hosting the celebration of the sacrament of marriage.

61.    Christians believe that God himself is the author of marriage.  The vocation to marriage is written in the very nature of man and woman as they came from the hand of the Creator.  Marriage is not a purely human institution despite the many variations it may have undergone through the centuries in different cultures, social structures, and spiritual attitudes.

62. The sacred and thus religious aspect of a wedding is not limited to just the exchange of vows between the bride and the groom. While the ceremony itself is obviously the central focus of a wedding, the wedding banquet is an integral component of this religious event. Sacred Scripture often uses the image of a wedding banquet to describe the Kingdom of heaven. Sacred Scripture begins with the creation of man and woman in the image and likeness of God and concludes with a vision of "the wedding-feast of the Lamb."

63. In Matthew 22:1-14, Jesus compares the Kingdom of heaven to a wedding feast.

64. Revelation 19:7-9 refers to the "wedding day of the Lamb," stating further, "Blessed are those who have been called to the wedding feast of the Lamb."

65. On the threshold of his public life, Jesus performs his first miracle (turning water into wine for the guests)—at his mother's request—during a wedding feast. The Christian community attaches great importance to Jesus' presence at the wedding at Cana. Christians see it as the confirmation of the goodness of marriage and the proclamation that henceforth marriage will be an efficacious sign of Christ's presence.

66. Since marriage establishes the couple in a public state of life in the Church, it is fitting that its celebration be public.

67. Jesus taught that where two or more gather in His name, He is present. (Matthew 18:20). At a Christian wedding, individuals gather in the name of Christ, thereby blessing the gathering with His presence.

68. Indeed, a wedding is not merely a "social gathering," such as attending a sporting event, going to a bar or restaurant with friends, watching a movie at a theater, or engaging in some other form of entertainment. A wedding is a sacred event that is protected by the First Amendment. Those who attend a wedding are more than spectators—they are witnesses who

solemnize this public event by their presence and are thus expressing their approval of this event by attending. Consequently, those who are present at a wedding, particularly the bride and groom, are engaging in a form of expressive association that is grounded in religious belief and Sacred Scripture.

69. Additionally, weddings are different from other public "social gatherings" in that the majority of the guests are typically family and friends. Consequently, and as just one example, Plaintiffs Vansolkema and Stuller currently have 170 guests that plan on attending their wedding at the Baker Events wedding property (which is currently prohibited, whether indoors or outdoors). These 170 guests, however, consist of only 50 households. Social distancing requirements apply by household, not simply by individuals. Under the Ottawa Department of Public Health's enforcement of the executive orders, 100 unrelated individuals from separate households are permitted to gather socially outdoors for a secular event, but Plaintiffs Vansolkema and Stuller are not permitted to have 50 households at their religious event.

70. Currently, Baker Events has 134 weddings booked for the remainder of the year. There have been approximately 24 weddings cancelled and 51 postponed to date. Should Defendants continue to impose their restrictions and prohibition on the weddings hosted at Baker Events' wedding property, the cancellations will increase exponentially, causing serious harm to Baker Events and Plaintiff Carll.

71. Plaintiffs Vansolkema and Stuller want to hold their wedding ceremony and reception indoors at the wedding property, as was their desire and plan when Plaintiff Vansolkema entered into the contract with Baker Events in May 2019. Plaintiffs Vansolkema and Stuller also want to have their 170 guests present as witnesses to this sacred event. However, as a result of Defendant Whitmer's executive orders and the application and

enforcement of these orders by the Ottawa Department of Public Health, Plaintiffs Vansolkema and Stuller are unable to do so, causing them irreparable harm.

72. Baker Events and Plaintiff Carll want to continue providing their wedding property as a place of religious worship for those seeking a venue for their weddings. However, as a result of Defendant Whitmer's executive orders and the application and enforcement of these orders by the Ottawa Department of Public Health, Baker Events and Plaintiff Carll are unable to do so, causing them irreparable harm.

**FIRST CLAIM FOR RELIEF**

**(First Amendment—Free Exercise of Religion)**

73. Plaintiffs hereby incorporate by reference all stated paragraphs.

74. By reason of the aforementioned acts, policies, practices, procedures, and/or customs, created, adopted, and enforced under color of State law, Defendants have deprived Plaintiffs of their right to the free exercise of religion in violation of the First Amendment as applied to the states and their political subdivisions under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

75. As set forth in this Complaint, the challenged restrictions on Plaintiffs' right to engage in religious worship are not neutral laws of general applicability in that they discriminate against Plaintiffs' religious worship.

76. As set forth in this Complaint, the challenged restrictions favor secular establishments, such as restaurants, over Baker Events' and Plaintiff Carll's use of their property for religious worship.

77. As a direct and proximate result of Defendants' violation of the First Amendment as set forth in this Complaint, Plaintiffs have suffered irreparable harm, including the loss of their fundamental constitutional rights, entitling them to declaratory and injunctive relief.

## SECOND CLAIM FOR RELIEF

### (Equal Protection—Fourteenth Amendment)

78. Plaintiffs hereby incorporate by reference all stated paragraphs.

79. By reason of the aforementioned acts, policies, practices, procedures, and/or customs, created, adopted, and enforced under color of State law, Defendants have deprived Plaintiffs of the equal protection of the law guaranteed under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

80. As set forth in this Complaint, the challenged restrictions deprive Plaintiffs of their fundamental rights and freedom, yet the orders provide exceptions for other activity and conduct that is similar in its impact and effects. The challenged restrictions lack any rational basis, are arbitrary, capricious, and vague, have no real or substantial relation to the objectives of the orders, and are a palpable invasion of rights secured by fundamental law in violation of the Equal Protection Clause.

81. When the government treats an individual disparately as compared to similarly situated persons and that disparate treatment burdens a fundamental right, targets a suspect class, or has no rational basis, such treatment violates the equal protection guarantee of the Fourteenth Amendment. As set forth in this Complaint, the challenged restrictions violate the equal protection guarantee of the Fourteenth Amendment.

82. As set forth in this Complaint, the challenged restrictions are being applied unequally based on the nature of the expressive conduct at issue in violation of the Fourteenth Amendment.

83. As a direct and proximate result of Defendants' violation of the equal protection guarantee of the Fourteenth Amendment as set forth in this Complaint, Plaintiffs have suffered irreparable harm, including the loss of their fundamental constitutional rights, entitling them to declaratory and injunctive relief.

### THIRD CLAIM FOR RELIEF

### (Due Process—Fourteenth Amendment)

84. Plaintiffs hereby incorporate by reference all stated paragraphs.

85. By reason of the aforementioned acts, policies, practices, procedures, and/or customs, created, adopted, and enforced under color of State law, Defendants have deprived Plaintiffs of their right to due process in violation of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

86. The challenged restrictions, as set forth in this Complaint, lack any rational basis, are arbitrary, capricious, and vague, have no real or substantial relation to the objectives of the orders, and are a palpable invasion of rights secured by fundamental law in violation of the Due Process Clause of the Fourteenth Amendment.

87. Defendants' actions, as set forth in this Complaint, deprived Baker Events and Plaintiff Carll of the use and enjoyment of their property for religious purposes without due process in violation of the Fourteenth Amendment.

88. The challenged restrictions, as set forth in this Complaint, are unconstitutionally vague because they fail to provide clear notice as to which gatherings are permissible and which

are not.  The ambiguity in the restrictions as to what types of First Amendment-protected activity are allowed have and will continue to have a chilling effect on religious exercise and expressive association.  The restrictions' ambiguity also invites discriminatory enforcement against disfavored individuals and groups.

89. Accordingly, the challenged restrictions violate the Due Process Clause of the Fourteenth Amendment because they are impermissibly vague, fail to give fair notice of the conduct that is required or prescribed, fail to provide minimal guidelines to govern law enforcement, and encourage arbitrary enforcement.

90. As a direct and proximate result of Defendants' violation of the Fourteenth Amendment as set forth in this Complaint, Plaintiffs have suffered irreparable harm, including the loss of their fundamental constitutional rights, entitling them to declaratory and injunctive relief.

## FOURTH CLAIM FOR RELIEF

### (First Amendment—Right of Association)

91. Plaintiffs hereby incorporate by reference all stated paragraphs.

92. By reason of the aforementioned acts, policies, practices, procedures, and/or customs, created, adopted, and enforced under color of State law, Defendants have deprived Plaintiffs of their right of association in violation of the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

93. The freedom to engage in association for the advancement of beliefs and ideas is an inseparable aspect of freedom of speech.  Indeed, implicit in the right to engage in activities protected by the First Amendment is a corresponding right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends.

94.     A wedding is a form of expressive association.

95.     As set forth in this Complaint, the challenged restrictions are being applied unequally based on the nature of the expressive conduct at issue in violation of the First Amendment.

96.     As a direct and proximate result of Defendants' violation of the right to association under the First and Fourteenth Amendments as set forth in this Complaint, Plaintiffs have suffered irreparable harm, including the loss of their fundamental constitutional rights, entitling them to declaratory and injunctive relief.

**FIFTH CLAIM FOR RELIEF**

**(First Amendment—Freedom of Speech)**

97.     Plaintiffs hereby incorporate by reference all stated paragraphs.

98.     By reason of the aforementioned acts, policies, practices, procedures, and/or customs, created, adopted, and enforced under color of State law, Defendants have deprived Plaintiffs of their right to freedom of speech in violation of the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

99.     A wedding is a form of expressive conduct. It is religious speech.

100.    Baker Events has the same food service license required for restaurants. However, because it is hosting a wedding rather than a random group of dinner customers, its conduct is prohibited. Accordingly, because Plaintiffs declared their intention to engage in expressive conduct, Defendants have imposed regulatory burdens on Plaintiffs that would not be applicable to other food service licensees.

101.    The challenged restrictions operate as a content-based restriction on Plaintiffs' expressive conduct. Accordingly, as set forth in this Complaint, the challenged restrictions are

being applied unequally based on the content of the expressive conduct at issue in violation of the First Amendment.

102. As a direct and proximate result of Defendants' violation of the right to freedom of speech under the First Amendment as set forth in this Complaint, Plaintiffs have suffered irreparable harm, including the loss of their fundamental constitutional rights, entitling them to declaratory and injunctive relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs ask this Court:

A) to declare that Defendants violated Plaintiffs' fundamental constitutional rights as set forth in this Complaint;

B) to enjoin Defendants' enforcement of the challenged restrictions as set forth in this Complaint;

C) to award Plaintiffs their reasonable attorneys' fees, costs, and expenses pursuant to 42 U.S.C. § 1988 and other applicable law;

D) to grant such other and further relief as this Court should find just and proper.

Respectfully submitted,

AMERICAN FREEDOM LAW CENTER

/s/ *Robert J. Muise*
Robert J. Muise, Esq. (P62849)
PO Box 131098
Ann Arbor, Michigan 48113
Tel: (734) 635-3756; Fax: (801) 760-3901
rmuise@americanfreedomlawcenter.org

David Yerushalmi, Esq. (Ariz. Bar No. 009616;
DC Bar No. 978179; Cal. Bar No. 132011;
NY Bar No. 4632568)
1901 Pennsylvania Avenue NW, Suite 201
Washington, D.C. 20006
Tel: (646) 262-0500; Fax: (801) 760-3901
dyerushalmi@americanfreedomlawcenter.org

*Attorneys for Plaintiffs*