UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BAKER EVENTS, LLC, *et al.*,

    Plaintiffs,

v.

GRETCHEN WHITMER, in her
official capacity as Governor for the
State of Michigan, *et al.*,

    Defendants.
_____/

CASE NO. 1:20-CV-654

HON. ROBERT J. JONKER

## **ORDER**

### Background

Plaintiffs filed an emergency motion on July 21 for a TRO and PI regarding a planned wedding this Friday, July 24, 2020. ECF No. 8. Plaintiffs are the wedding venue (Baker Events, LLC, and its owners), and the anticipated bride and groom. The named defendants are the Governor and the Attorney General of Michigan, and the head of the Ottawa County Health Department. Plaintiffs say the defendants have put them on notice that proceeding with the wedding as originally planned would violate portions of the Governor's Executive Order, and that the Ottawa County Health Department issued a cease and desist order to Baker Events on July 2, 2020.[1] All parties have filed expedited briefs. The Court concludes it can decide the motion on the briefs.

Plaintiffs say the event is constitutionally protected free speech and religious worship exempt from regulation under the express terms of the Governor's Executive Order; or

---

[1] The cease and desist order appears directed at Baker Events' wedding business generally, and not Friday's wedding in particular. ECF No. 1, Complaint, at Ex. 5.

alternatively, that the food and beverage restrictions imposed on the wedding venue should be no more onerous than those imposed by the Executive Order on bars and restaurants. The parties have evidently negotiated over various possibilities but have not come to terms. No one is suggesting, however, that the Ottawa County Sheriff, Michigan State Police, Holland Police or other law enforcement authorities are standing by ready to prevent the wedding, issue tickets, or record the license numbers of attendees. The only concrete enforcement or threatened enforcement the Court sees in the record is the July 2 cease and desist order from the Ottawa County Health Department to the wedding venue regarding its general operations, not to the bride and groom for this Friday's wedding. If it is a valid order, and Baker Events and its owners choose to ignore it, they may face "civil citations and/or the suspension of your service license until you can demonstrate compliance with Executive Orders." *Id.*, at Ex. 5, PageID.49. Nothing in the letter threatens action against the bride and groom.[2]

## Legal Standards

Judge Maloney[3] summarized the applicable legal standards in a separate case challenging aspects of the Governor's Executive Order, *CH Royal Oak, LLC v. Whitmer*, No. 1:20-CV-570 (filed June 26, 2020), ECF No. 17, PageID.724-25. In determining the propriety of a preliminary injunction, a court considers each of four factors: (1) whether the moving party demonstrates a strong likelihood of success on the merits; (2) whether the moving party would experience irreparable injury without the order; (3) whether the order would cause substantial harm to others; and (4) whether the order would serve the public interest. *Ohio Republican Party v. Brunner*, 543

---

[2] It appears that Baker Flats and the bride and groom are continuing to work on alternate plans that might be acceptable to everyone. The venue either has erected, or plans to erect, a tent for an outdoor venue that could accommodate more people consistent with the terms of the Executive Order. ECF No. 8, Emergency Motion, PageID.66. And as discussed below, the bride and groom made their own planning adjustments some time ago.

[3] This is Judge Maloney's case. The undersigned is covering emergency matters on Judge Maloney's docket during his planned absence this week.

F.3d 361 (6th Cir. 2008) (quoting *Northeast Ohio Coalition for Homeless & Service Employees Int'l Union v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006)).

The four factors are not separate pre-requisites but instead interconnected considerations to balance. *Northeast Ohio Coalition*, 467 F.3d at 1009; *Coalition to Defend Affirmative Action v. Granholm*, 473 F.3d 237, 244 (6th Cir. 2006). "A preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet Lexington-Fayette Urban County Gov't*, 305 F.3d 566, 573 (6th Cir.2002) (internal citation omitted); see *Patio Enclosures, Inc. v. Herbst*, 39 F. App'x 964, 967 (6th Cir. 2002) (citing *Leary v. Daeschner*, 228 F.3d 729, 736 (6th Cir. 2000)). "[A] party requesting a preliminary injunction must generally show reasonable diligence." *Benisek v. Lamone*, 138 S.Ct. 1942, 1944 (2018).

The purpose of a preliminary injunction is preservation of the status quo. *Smith Wholesale Co., Inc. v. R.J. Reynolds Tobacco Co.*, 477 F.3d 854, 873 n. 13 (6th Cir. 2007) (quoting *United States v. Edward Rose & Sons*, 384 F.3d 258, 261 (6th Cir. 2004)). "Although the four factors must be balanced, the demonstration of some irreparable injury is a sine qua non for issuance of an injunction." *Patio Enclosures*, 39 F.App'x at 967 (citing *Friendship Materials, Inc. v. Michigan Brick, Inc.*, 679 F.2d 100, 105 (6th Cir. 1982)).

### Imminent Irreparable Harm

On the present record, the Court does not see imminent irreparable harm to justify Court intervention just a few hours before a long-scheduled event. As for Baker Events, this is really an effort to obtain pre-enforcement review of a health department cease and desist order they have known about since July 2 and have been trying to negotiate ever since. This is not imminent and irreparable injury sufficient to support pre-enforcement review. *See Susan B. Anthony List v.*

*Driehaus*, 573 U.S. 149, 159 (2014) (finding that to establish standing in a pre-enforcement action, a plaintiff must adequately allege (1) "an intention to engage in a course of conduct arguably affected with a constitutional interest," (2) that is "proscribed by a [law]," and (3) "there exists a credible threat of prosecution thereunder.") (quotation omitted); *cf. Tabernacle Baptist Church, Inc. of Nicholasville v. Beshear*, No. 3:20-CV000033-GFVT, 2020 WL 2305307, at *2 (E.D. Ky. May 8, 2020) (plaintiff established standing in pre-enforcement challenge by satisfying all three factors). If negotiations and accommodations fail, and if the health department actually follows through to impose particular sanctions, the venue will be able to challenge any sanctions imposed. Moreover, if the venue succeeds in demonstrating business harm caused by an unlawful exercise of power by public authorities, other remedies, including the possibility of money damages, may be appropriate. There is no business emergency on the present record that justifies emergent relief.

As to the bride and groom themselves, their publicly available website suggests they have already made plans for a different and more limited celebration than they originally planned. Their publicly available wedding site says:

Kiley Stuller and David Vansolkema's Wedding Website                                                              2

≡ KILEY & DAVID (/WEDDING/KILEYANDDAVID2020)

## SCHEDULE/UPDATE

Hi! It saddens me to say that with everything happening right now we are only able to have the wedding party and family attend our wedding.. we were looking forward to celebrating with you! This pandemic just doesn't make it easy to celebrate with all the people we love.

<3 Kiley & David

**WEDDING OF KILEY AND DAVID VANSOLKEMA**

FRIDAY, JULY 24, 2020

5:00 PM

Baker Lofts
217 East 24th Street
Holland, MI 49423

MAP
(HTTPS://MAPS.GOO

https://www.zola.com/wedding/kileyanddavid2020/event                                                   7/22/2020

There is nothing in the plaintiffs' motion suggesting the Defendants have any objection to their revised party plan. And there is certainly nothing in the present litigation record that indicates the bride and groom will be unable to solemnize their marriage this Friday as planned, as a matter of both religious practice and governmental recognition. They may not be able to have the full party they originally planned, but they can certainly get married in a way recognized by church and state and celebrate with a more limited array of guests. This is a loss, to be sure, but not the kind of imminent and irreparable injury the Court would normally expect to see for emergent relief like this.

5

The Declaration dated July 20, 2020, from the groom, ECF 9-2, does not mention the notice even though it was posted both before and after July 20, 2020. The declaration suggests that as of July 20, there had been no change of plans, which certainly seems inconsistent with the website message. The Court asked the parties for further briefing regarding the practical significance of the website message on the Court's assessment of what, if any, emergency exists. Plaintiffs' attorney responded but did not include any supplemental declaration from the bride or groom attempting to harmonize the statements. Instead, counsel endeavored to do so by way of argument. The Court finds the argument unpersuasive. The argument effectively concedes that the wedding itself is going forward and that the only real issue is how big the reception will be, and whether it will be inside or outside. These are obviously important considerations, and the Court in no way minimizes the disappointment for any bride and groom who decide – however reluctantly – to trim the reception during a pandemic. But these are not the core interests protected by the First Amendment speech, association, and religious practice provisions.

### Balance of Harms and Public Harm

A Court must insist on a strong showing of standing for pre-enforcement review to avoid being thrust on an emergent basis into what is fundamentally a regulatory tussle, rather than a constitutional matter. Plaintiffs' particular request for relief here illustrates the point.  ECF No. 9-4, Proposed Temporary Restraining Order.  The particular terms of the TRO/PI that plaintiffs seek are not specific orders directed at particular public officials that would mandate or constrain specific action regarding expressive or religious activity at this Friday's wedding.  In fact, the relief requested doesn't  focus much on this Friday's wedding at all; instead, it focuses on the overall wedding business of Baker Events and seeks a judicial re-write of the regulatory terms of the Governor's Executive Order in six bullet points that would apply not just this Friday, but to all

6

"weddings currently scheduled to take place at Baker Events' wedding property." ECF No. 9-4, at PageID.165.

The Court has no expertise in weighing these tradeoffs, and no time on an emergent basis to develop the kind of factual record necessary to do so in a way that honors the public and third-party interests at stake. But those public and third-party interests are two of the four factors the Court must consider in weighing emergent relief. Business losses are real and substantial. So are the risks of spreading infectious disease. An appointed judge's ad hoc decisions on the tradeoffs are no better than those of an elected Governor.[4] More importantly, they would not be rooted in the soil of any free speech and religious practice rights of the bride and groom that this Court has the privilege and obligation to vindicate. Those rights are secure in this case without the Court: there is nothing in the Executive Orders or the health department cease and desist order that prevents the bride and groom from being married this Friday in a ceremony that freely expresses their love and commitment to each other and their religious beliefs, and that results in a marital union fully recognized by church and state.

## Other Factors

The Court will not attempt to provide on an emergent basis an Order that addresses the merits of all the issues dividing the parties. Suffice to say that the plaintiffs' probability of success is not so overwhelmingly high as to outweigh the other factors arrayed against emergent relief, particularly in light of the short timeline provided for the Court's consideration. *Cf. Benisek*, *supra*, 138 S.Ct. at 1944 (2018). There are substantial questions regarding the lawfulness under State law of government by serial Executive Order, and the Court can understand Plaintiffs' frustration with

---

[4] In the Court's view, neither of these options is ideal. The normal lawmaking process of legislative enactment and presentment to the Governor is more likely to produce outcomes that balance these competing interests in a way that is acceptable to the broadest possible segment of the citizenry, and that at least allows disappointed citizens to feel heard.

trying to keep up with whatever version of the Order is currently in effect, and what the terms actually prohibit.[5] But the scope and limits of the Governor's powers are the subject of other pending litigation in the State Court, and of a certified question from Judge Maloney of this Court to the Michigan Supreme Court. *See Midwest Institute of Health, PLLC, d/b/a Grand Health Partners v. Whitmer*, No. 1:20-CV-414 (W.D. Mich., filed May 12, 2020). It would be inappropriate for the undersigned to weigh in on such matters on an emergent basis.

Similarly, litigation continues to percolate over rational basis review of business regulation by Executive Order. *See, e.g.*, *League of Independent Fitness Facilities and Trainers, Inc. v. Whitmer*, No. 1:20-cv-458 (W.D. Mich., filed May 22, 2020). At a minimum, the County has arguably articulated a rational distinction between full-service restaurants and event venues, like Baker, that make food and drink available through third-party catering services.

And, of course, litigation addressing how far a Governor may go in limiting speech and religious practice under the First Amendment is also continuing. But First Amendment cases typically focus on core expressive rights like public demonstrations, and core religious practice like regularly scheduled worship services. The Governor's Executive Order has carved out protection for these activities. Gathering a congregation to witness a wedding (or funeral for that matter) may implicate assembly and worship interests, to be sure. But the focus of this case is not so much on these interests as on the size of the party to follow. And that is insufficient reason to support emergent relief in this case.

---

[5] According to Michigan.gov, the Governor has issued 152 Executive Orders so far this year. Not all address Covid-19, but many do. It is hard for citizens, law enforcement, and the Courts to keep up with the current rules, as a practical matter. And even when these constituencies catch up with the latest development, law enforcement rarely has sufficient resources to devote to policing the new array of criminal misdemeanor activity made possible by the Executive Order. This naturally creates the risk of selective enforcement that quickly fuels a sense of unfairness and arbitrary selection of winners and losers.

**Conclusion**

Accordingly, the Motion for TRO/PI is denied at this time.

Dated:   July 23, 2020           /s/ Robert J. Jonker
                                 ROBERT J. JONKER
                                 CHIEF UNITED STATES DISTRICT JUDGE